## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

MARIELA BORROTO,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Case No:  2:17-cv-673-FtM-99CM

---

## REPORT AND RECOMMENDATION[1]

Plaintiff Mariela Borroto seeks judicial review of the denial of her claims for disability and Social Security Income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").  The Court has reviewed the record, the Joint Memorandum (Doc. 21) and the applicable law.  The Court respectfully recommends the decision of the Commissioner be reversed.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.  In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.

## I.    Issues on Appeal[2]

Plaintiff raises three issues on appeal: (1) whether the administrative law judge ("ALJ") properly considered Plaintiff's need to use a cane in assessing Plaintiff's residual functional capacity ("RFC"); (2) whether the ALJ properly considered the opinion of consultative examiner Pascal Bordy, M.D. in assessing Plaintiff's RFC; and (3) whether the ALJ's step five conclusion was supported by substantial evidence.

## II.    Summary of the ALJ's Decision

On June 19, 2014,[3] Plaintiff applied for SSI, alleging her disability began on January 1, 2012 due to herniated disc, depression, high blood pressure, temporal memory loss and concentration issues.   *See* Tr. 66, 175-79.   Plaintiff's claims were denied initially on August 22, 2014, and upon reconsideration on November 11, 2015.   Tr. 66-75, 77-87.   On January 9, 2015, Plaintiff requested a hearing before an ALJ.   Tr. 106-07.   ALJ Paul Greenberg held a hearing on July 11, 2016, and on January 3, 2017, the ALJ found Plaintiff was not disabled from June 19, 2014 through the date of the decision.   Tr. 43-65, 25-35.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date of June 19, 2014.   Tr. 27.   Next, at step two, the ALJ found Plaintiff had these severe impairments: degenerative disc disease and

---

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[3] Plaintiff's SSI application indicates she applied for SSI on July 24, 2014, but her disability determination explanations, the ALJ's decision and the Joint Memorandum indicate she filed her initial claim on June 19, 2014.   *See* Tr. 25, 35, 66, 77; Doc. 21 at 1.

affective disorder.  *Id.*  At step three, the ALJ concluded that through the date of the decision, Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 28.  The ALJ determined Plaintiff had the RFC to perform a limited range of sedentary work:[4]

> The claimant occasionally can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  The claimant cannot perform work climbing ladders, ropes, and scaffolds.  She must be able to sit for 5 minutes after standing for 25 minutes, or stand for 5 minutes after sitting for 25 minutes, but she can continue working in either position.  She cannot work outdoors in the sun (i.e., she is limited to work that primarily is indoors).  The claimant can perform work involving simple, routine tasks.

Tr. 29.  At step four, the ALJ determined Plaintiff could not perform any past relevant work.  Tr. 33.  Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy Plaintiff could perform, identifying the jobs of tube operator, document preparer and order clerk.  Tr. 34.  The ALJ concluded Plaintiff was not disabled from June 19, 2014 to January 3, 2017, the date of the decision.  Tr. 35.  The Appeals Council denied Plaintiff's request for review

---

[4] The regulations define sedentary work as work that involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

on October 13, 2017, and Plaintiff subsequently filed a Complaint with this Court. Tr. 1-3; Doc. 1.   The matter is now ripe for review.

### III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).[5]   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."   *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580,

---

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions.   *See, e.g.*, 20 C.F.R. §§ 416.927, 416.920c (effective March 27, 2017).   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 416.927 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review.   *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.   Discussion

### a.   *RFC determination*

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based on all the relevant medical and other evidence in the record of a claimant's ability to work despite her limitations.   20 C.F.R. §§ 416.920(e), 416.945(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).   For these purposes, relevant evidence in the record includes any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 416.945(a).   The claimant's age, education and work experience, and whether she can return to her past relevant work also are considered in determining her RFC.   *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).   The ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see* 20 C.F.R. § 416.945(a)(2); *Gibson v. Heckler*, 779 F.2d 619, 622-23 (11th Cir.

1986).    The ALJ must consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings on the effect of the impairments and whether they result in disability.   *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).

Here, the ALJ found Plaintiff had the RFC to perform sedentary work with certain limitations:

> The claimant occasionally can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.   The claimant cannot perform work climbing ladders, ropes, and scaffolds.   She must be able to sit for 5 minutes after standing for 25 minutes, or stand for 5 minutes after sitting for 25 minutes, but she can continue work in either position.   She cannot work outdoors in the sun (i.e., she is limited to work that primarily is indoors).   The claimant can perform work involving simple, routine tasks.

Tr. 29.   In determining Plaintiff's RFC, the ALJ gave substantial weight to the opinion of consultative examiner Dr. Bordy despite noted inconsistencies with the record as a whole:

> With regard to the opinion evidence relating to the claimant's physical allegations, I give substantial weight to the opinion of consultative examiner Pascal Bordy, M.D., who examined the claimant post-hearing. He reported relatively mild range of motion limitations, but concluded that the claimant's ability to stand and walk, and to perform postural activities, were significantly limited.   I note that there are some inconsistencies in Dr. Bordy's assessment.   For example, on the one hand, Dr. Bordy offers a very severe assessment of the claimant's ability to perform postural activities, and also somewhat extreme environmental limitations that are not reasonably supported by the overall medical record.   However, Dr. Bordy then suggests that the claimant retains substantial ability to perform a range of daily activities.   Notwithstanding these possible inconsistencies, I find that Dr. Bordy's assessment overall points to limitations consistent with the residual functional capacity.

Tr. 32-33 (emphasis omitted) (internal citations omitted).

Plaintiff challenges the ALJ's RFC finding on two bases: (1) for failing to include in the hypothetical to the VE and the RFC a limitation about Plaintiff's medical need to use a cane; and (2) for failing to include in the RFC the limitations Dr. Bordy assessed.   The Court will address each.

i.   Plaintiff's use of a cane

Plaintiff argues the ALJ failed to address the opinion of Dr. Bordy that it was medically necessary for Plaintiff to use a cane or to explain his reasoning for not including the cane requirement in Plaintiff's RFC assessment.   Doc. 21 at 10. Plaintiff asserts the error was not harmless because the VE testified the use of a cane would preclude Plaintiff's ability to perform the identified jobs at step five or any other job.   *Id.* at 11.   Plaintiff also contends if she was off task 5 out of every 25 minutes to use a cane, she would exceed the 10 percent off-task limit identified as acceptable by the VE.   *Id.*

The Commissioner argues the ALJ is not required to explicitly discuss every piece of a medical opinion when it is evident the ALJ considered the opinion as a whole.   *Id.* at 12.   The Commissioner also contends "it is clear from the decision that Dr. Bordy's opinion that Plaintiff required a cane was included in the part of the opinion that the ALJ rejected, and substantial evidence supports the rejection of the portion of the opinion," referencing various medical records indicating Plaintiff had normal musculoskeletal exam findings.   *Id.* at 13-14.   Finally, the Commissioner argues any error in not including a limitation that Plaintiff needed a cane to ambulate more than 5-to-10 feet was harmless because "the VE never testified that Plaintiff

would be unable to perform the identified sedentary jobs if she needed a cane when walking more than 5[-to]-10 feet," and the record does not indicate Plaintiff requires a cane to stand.  *Id.* at 14-15.

Courts generally refer to SSR 96-9p for its guidance on determining if a hand-held assistive device is medically required:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.  For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers.  On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (emphasis in original) (footnote

omitted); *see, e.g.*, *Holmes v. Comm'r of Soc. Sec.*, No. 2:17-cv-367-FtM-38CM, 2018 WL 3850780, at *7 (M.D. Fla. July 27, 2018), *report and recommendation adopted*, 2018 WL 3831168 (M.D. Fla. Aug. 13, 2018); *Gersic v. Comm'r of Soc. Sec.*, No. 2:16-cv-631-FtM-CM, 2017 WL 3705839, at *6 (M.D. Fla. Aug. 28, 2017); *McGriff v. Berryhill*, No. 3:16-cv-1074-J-34JRK, 2017 WL 3701896, at *5 (M.D. Fla. Aug. 1, 2017), *report and recommendation adopted*, 2017 WL 3687256 (Aug. 25, 2017); *Brownell v. Comm'r of Soc. Sec.*, No. 2:13-cv-173-FtM-DNF, 2014 WL 4809470, at *7 (M.D. Fla. Sept. 26, 2014).

Here, on November 10, 2014, Plaintiff completed a function report for the SSA, on which she indicated she uses a cane.  Tr. 249-56.  The notes from Dr. Bordy's consultative examination indicate Plaintiff reported she "ambulates with a cane in the right hand 5-6 hours since 02/2016."  Tr. 720.  Dr. Bordy observed Plaintiff was using a cane in her right hand, and he noted Plaintiff reported she could walk 10 feet without her cane and a half mile with her cane.  *Id.*  Upon physical examination, Dr. Bordy noted Plaintiff had difficulty standing from a sitting position, she walked 100 feet in the office with a limp and with her cane, and she walked 5 feet without her cane.  *Id.*  In his medical source statement, Dr. Bordy opined Plaintiff required a cane to ambulate, and using a cane was medically necessary.  Tr. 731.  Dr. Bordy also opined Plaintiff could ambulate only 5-to-10 feet without a cane, and Plaintiff could use her free hand to carry small objects while using her cane.  *Id.*

The ALJ repeatedly acknowledged Plaintiff's use of a cane during the hearing and in his decision.  Tr. 28, 30-31, 48.  In evaluating whether Plaintiff had an

impairment or combination of impairments that met a listing, the ALJ found that "[e]ven though the claimant walks with a cane, there is no indication from the medical file that the claimant would be precluded from ambulating effectively."[6]  Tr. 28.   In assessing Plaintiff's RFC, the ALJ noted Plaintiff "has been using a cane for walking since last year, and the cane was prescribed by her physician."  Tr. 30.   The ALJ also noted Plaintiff was using a cane when she was evaluated by consultative examiner Dr. Bordy.  Tr. 31.   Contrary to the Commissioner's contention, the decision contains no references—and certainly no analysis—indicating the ALJ rejected Dr. Bordy's opinion that Plaintiff requires the use of a cane or otherwise determined Plaintiff's cane was not medically necessary.  *See* Doc. 21 at 13-14; Tr. 25-35.   Although the ALJ noted some inconsistencies between Dr. Bordy's general assessment and the overall record, the ALJ afforded Dr. Bordy's opinion substantial weight and did not discount Dr. Bordy's opinion that Plaintiff's use of a cane was medically necessary.  *See* Tr. 32-33.   Therefore, the Court recommends the ALJ erred in failing to adequately account for the effect of Plaintiff's use of a cane on her RFC.

Further, the hypotheticals posed by the ALJ to the VE at the hearing did not include Plaintiff's use of a cane, but Plaintiff's attorney cross-examined the VE about it:

---

[6] It is unclear whether the ALJ meant Plaintiff was not precluded from ambulating effectively with her cane or without it.  Given the lack of clarity and the section of the decision in which this statement was made, the Court does not interpret it as a finding that Plaintiff's cane was not medically necessary.

| | |
|---|---|
| [Atty]: | If I added to the first – I went back to the first hypothetical and I added a limitation of that the individual needed to use a cane, so when they – if the individual were standing up, they would need to hold a cane in one hand, would that individual still be able to do the light jobs? |
| [VE]: | No, those positions at the light level would require bimanual dexterity. |
| [Atty]: | And if I added that same limitation to the sedentary hypothetical question, would that have any effect on any of those three jobs? |
| [VE]: | Yes, again, if the individual has a sitting – well, if the individual at the sedentary level has a sitting and standing flexibility need, then those positions would not be performable when standing because bimanual dexterity would be required. |

Tr. 61-62.  Although Dr. Bordy's opinion does not indicate Plaintiff requires a cane to stand, Plaintiff's ability to perform sedentary work may be affected if she requires a cane to walk more than 5-to-10 feet.  *See* Tr. 731.  The regulations acknowledge that occasional walking may be required to perform sedentary work:

> Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).  Further, SSR 96-9p indicates the unskilled sedentary occupational base would not ordinarily be significantly eroded if an individual required a hand-held assistive device "only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes," but Dr. Bordy's opinion suggests Plaintiff requires a cane to ambulate even short distances regardless of the terrain.  *See* Tr. 731; SSR 96-9p, 1996 WL 374185, at *7.   SSR 96-9p also suggests there may be a greater impact on the occupational base for individuals who require a cane for balance:

- 11 -

> On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7.

Because the VE's testimony did not specify what the effects of using a cane to ambulate distances greater than 5-to-10 feet would be on the sedentary jobs identified, the Court cannot determine whether substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform the identified jobs.   As this Court stated in *Parker*:

> While under certain facts and circumstances an individual using a medically required hand-held assistive device, for example one who uses such a device in one hand, can perform sedentary work, the Court is unable to determine whether such facts or circumstances exist in this case.

*Parker v. Comm'r of Soc. Sec.*, No. 2:16-cv-352-FtM-CM, 2017 WL 1372157, at *7 (M.D. Fla. Apr. 17, 2017) (internal citations omitted) (citing SSR 96-9p, 1996 WL 374185, at *7).   The ALJ's decision neither discredits Plaintiff's need for a cane nor suggests the use of a cane is not medically necessarily.   *See* Tr. 25-35.   But the ALJ did not discuss how Plaintiff's use of a cane impacts her RFC limitation.   *See id.* Therefore, the Court recommends the decision of the Commissioner be reversed and remanded for the ALJ to consider whether Plaintiff's use of a cane affects her RFC, and if so, to include appropriate limitations in the hypotheticals posed to the VE. *See Holmes*, 2018 WL 3850780, at *7 (recommending case be reversed and remanded where ALJ failed to consider plaintiff's need for a cane when making RFC determination); *Brownell*, 2014 WL 4809470, at *7 (same).

ii.  Limitations Identified by Dr. Bordy

Plaintiff argues that although the ALJ gave Dr. Bordy's opinion substantial weight, he failed to incorporate most of the limitations identified by Dr. Bordy.   Doc. 21 at 16.   Thus, it is unclear to what part of Dr. Bordy's opinion the ALJ gave substantial weight because the ALJ incorporated only Dr. Bordy's lifting limitations in the RFC.   *Id.* at 17.   The ALJ failed to incorporate or discount Dr. Bordy's limitations regarding Plaintiff's ability to sit, stand or walk during a workday.   *Id.* at 16.   Plaintiff asserts the limitations assessed by Dr. Bordy would preclude all work because they would limit Plaintiff to working only 6 hours in an 8-hour workday. *Id.* at 17.   Plaintiff argues that because the ALJ gave Dr. Bordy's opinion substantial weight without explaining what parts of the opinion he adopted, the ALJ's decision is unsupported by substantial evidence.   *Id.*

The Commissioner responds the ALJ explained he gave substantial weight to Dr. Bordy's opinion to the extent the limitations were consistent with the RFC, identified inconsistencies in Dr. Bordy's assessment and concluded the more severe limitations were not supported by the overall medical record.   *Id.* at 19.   The Commissioner asserts that because the ALJ did not wholly adopt Dr. Bordy's opinion, his RFC determination did not have to mirror Dr. Bordy's opinions.   *Id.*   The Commissioner points out that Dr. Bordy's opinions are not entitled to controlling weight because he was not a treating source, and the results of Dr. Bordy's physical examination of Plaintiff do not support the severe limitations assessed.   *Id.*   The Commissioner argues the records and opinions of other providers support the ALJ's

RFC decision, citing to various medical records from February 2013 to June 2016. *Id.* at 20-22.   The Commissioner contends Plaintiff's RFC is an issue reserved to the Commissioner, and the ALJ adequately evaluated the relevant evidence in assessing Plaintiff's RFC, leading to an RFC decision supported by substantial evidence.   *Id.* at 22-23.

In evaluating the medical opinions of record, including those of treating medical providers, examining medical providers and non-examining state agency medical consultants, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."   *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 416.927(c), (e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).   "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."   20 C.F.R. § 416.927(a)(1); *Winschel*, 631 F.3d at 1178-79.

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 416.927(c)(1)-(6).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory

diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004). Further, the ultimate opinions on whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are reserved exclusively to the Commissioner. 20 C.F.R. § 416.927(d)(1)-(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

The ALJ referred Plaintiff to an examination after her hearing for "an updated independent assessment" of her abilities. Tr. 64. Dr. Bordy conducted the consultative examination on August 9, 2016. Tr. 719. Dr. Bordy's physical examination notes indicate Plaintiff had difficulty standing from a sitting position, walked 100 feet with a limp and a cane and was able to walk 5 feet without her cane. Tr. 720. There was no heat, redness, swelling, thickening, atrophy or deformity in any of her joints, and she had full painless range of motion in all of her joints. Tr. 721. Her upper extremities had normal muscle strength graded 5/5 bilaterally. *Id.* Her lower extremities had no pain, tenderness or decreased sensation bilaterally and had normal muscle strength graded 5/5 bilaterally. Tr. 722. Her straight leg raise test was positive at 30 degrees bilaterally, and she had hypertonic, tender paraspinal musculature in her lumbar spine. *Id.*; *see* Doc. 21 at 20. Plaintiff could squat a quarter of the way down secondary to back pain. Tr. 723. She could not walk on her toes and heels bilaterally secondary to pain, and she could perform a tandem gait.

*Id.*  Dr. Bordy's clinical impressions included "[c]hronic lumbar, lumbosacral pain secondary to degenerative disc disease with radiculopathy and myofascitis."  *Id.*

Dr. Bordy completed a medical source statement the same day as the consultative examination.  *See* Tr. 730-35.  Dr. Bordy opined that Plaintiff had these limitations: she could occasionally lift or carry up to 10 pounds, but never anything heavier.  Tr. 730.  She could sit up to one hour at a time for up to 3 hours per 8-hour workday, stand for up to 30 minutes at a time for up to 2 hours per 8-hour workday, and walk for up to 30 minutes at a time for up to one hour per 8-hour workday.  Tr. 731.  She could never reach overhead but could otherwise reach, handle, finger, feel and push/pull continuously.  Tr. 732.  She could never operate foot controls.  *Id.*  She could never balance; stoop; kneel; crouch; crawl; or climb stairs, ramps, ladders or scaffolds.  Tr. 733.  She could never be exposed to unprotected heights; moving mechanical parts; humidity and wetness; dust, odors, fumes and pulmonary irritants; extreme cold; extreme heat; or vibrations.  Tr. 734.  She could occasionally operate a vehicle and could handle quiet or moderate noise.  *Id.*  Based on Plaintiff's impairments, Dr. Bordy opined Plaintiff could shop; travel without the assistance of a companion; ambulate without a wheelchair, walker, two canes or two crutches; use standard public transportation; climb a few steps at a reasonable pace with a single hand rail; prepare a simple meal and feed herself; care for her personal hygiene; and sort, handle or use paper/files; but she could not walk a block at a reasonable pace on a rough or uneven surface.  Tr. 735.  Dr. Bordy

concluded the limitations assessed had lasted or would last for 12 consecutive months.  *Id.*

The Court recommends the ALJ erred by failing to adequately evaluate Dr. Bordy's medical opinions.  Despite referring Plaintiff to Dr. Bordy for an updated assessment of her physical abilities, the ALJ failed to either address or adequately explain why he was not adopting "a number of significant restrictions opined to by a doctor whose opinions he purportedly gave 'substantial weight.'"  *See* Tr. 32-33; *New v. Colvin*, No. 3:15-cv-368-J-JBT, 2015 WL 12851553, at *2 (M.D. Fla. Dec. 10, 2015). The ALJ implied Dr. Bordy's "very severe" assessment of Plaintiff's postural limitations contradicted Plaintiff's ability to perform a range of daily activities.  *See* Tr. 33.  It is unclear, however, how the two conflict.  The ALJ never explains how an inability to climb stairs, ramps, ladders or scaffolds; balance; stoop; kneel; crouch or crawl precludes the ability to perform the very basic activities on the medical source statement, such as shopping; traveling without a companion for assistance; ambulating without a wheelchair, walker, two canes or two crutches; using standard public transportation; climbing *a few* steps at a reasonable pace with a single handrail; preparing simple meals and feeding herself; caring for personal hygiene; and sorting, handling or using paper/files.  *See* Tr. 33, 733, 735.

Further, the ALJ never addressed the limitations Dr. Bordy assessed in Plaintiff's ability to sit, stand and walk.  *See* Tr. 33, 731.  And although the ALJ found that "Dr. Bordy's assessment overall points to limitations consistent with the [RFC]," the only limitations Dr. Bordy assessed that the ALJ included in his RFC

determination were that Plaintiff could never climb ladders, ropes and scaffolds and that Plaintiff could not carry over 10 pounds.[7]   *See* Tr. 29, 33, 730, 733.   Thus, as Plaintiff persuasively articulates, "[T]he ALJ's analysis of Dr. Bordy's opinion begs a question as to what part of Dr. Bordy's opinion the ALJ gave 'substantial weight.'" Doc. 21 at 17.   It also begs a question why the ALJ referred Plaintiff to consultative examiner, as the ALJ's RFC finding mirrors the hypothetical posed to the VE during the hearing despite Dr. Bordy's markedly different assessment of Plaintiff's limitations.   *Compare* Tr. 29, 57-59, *with* Tr. 730-35.   Accordingly, the Court recommends the case be remanded for the ALJ to adequately address Dr. Bordy's opinions in assessing Plaintiff's RFC.   *See New*, 2015 WL 12851553, at *2 (reversing and remanding case where ALJ failed to address or explain why he was not adopting various limitations assessed by a consultative examiner whose opinion the ALJ purportedly gave substantial weight).

### b.  *Step five determination*

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy that the claimant can perform given her RFC. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Brown*, 831 F.2d 1007, 1011 (11th Cir. 1987)).   If the Commissioner can produce evidence of jobs available in

---

[7] The ALJ's finding that Plaintiff could not carry more than 10 pounds is implicit in his determination that Plaintiff is limited to sedentary work, which by definition only includes jobs requiring workers to "lift[] no more than 10 pounds at a time."   *See* 20 C.F.R. § 416.967(a).

significant numbers in the national economy that Plaintiff can perform, the burden shifts back to Plaintiff to prove she cannot perform the jobs identified by the Commissioner.   *See id.* (citing *Hale*, 831 F.2d at 1011); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citing *Jones*, 190 F.3d at 1228).

The ALJ must consider the claimant's RFC, age, education and work experience to determine whether the claimant "can make an adjustment to other work."   20 C.F.R. § 416.920(a)(4)(v), (g).   In making this determination, "the ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence."   *Wilson*, 284 F.3d at 1227.   The ALJ may consider the DOT, which is published by the Department of Labor.   SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see* DOT, Occupational Definitions (4th ed., rev. 1991).   The ALJ also may consider the testimony of a VE as a source of occupational evidence.   SSR 00-4p, 2000 WL 1898704.   Further, "in order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   *Phillips*, 357 F.3d at 1240 n.7 (quoting *Jones*, 190 F.3d at 1229).

At the hearing, the VE testified there would be a representative number of jobs accommodating the hypothetical person the ALJ presented with Plaintiff's ultimate RFC determination—including a limitation to simple, routine tasks—and identified the jobs of tube operator, document preparer and order clerk.   Tr. 29, 59-60.   The ALJ relied on the VE's testimony to find jobs exist in significant numbers in the national economy Plaintiff can perform based on her age, education, work experience

and RFC, namely the three jobs identified by the VE.   Tr. 34.   The ALJ asked the VE whether her testimony was consistent with the DOT, and the VE answered in the affirmative but noted his testimony regarding "off-taskness and absenteeism" was based on over 25 years of experience and analysis of market surveys.   Tr. 64.   In his decision, the ALJ found the VE's testimony was consistent with the DOT as required under SSR 00-4p.   Tr. 34.

Plaintiff argues her limitation to "simple, routine tasks" contradicts the DOT descriptions for the three jobs the VE identified at the hearing.   Doc. 21 at 26; *see* Tr. 29, 58.   Plaintiff asserts that because the jobs the VE identified have a reasoning level of 2 or 3, they require an ability to carry out detailed or greater than detailed instructions.   *Id.*   Thus, Plaintiff contends the VE's testimony that Plaintiff could perform the jobs of tube operator, document preparer and order clerk despite her limitation to "simple, routine tasks" conflicted with the DOT, resulting in a decision unsupported by substantial evidence.   *Id.* at 27.   The Commissioner responds "the ALJ fulfilled his responsibility under SSR 00-4p of asking the VE about any possible inconsistency between her testimony and the information provided in the DOT, and the ALJ was not required to independently investigate the VE's testimony or further interrogate the VE about her testimony."   *Id.* at 28.   The Commissioner relies on unpublished Eleventh Circuit and Middle District of Florida decisions—including a decision by this Court—finding no conflict between a limitation to simple tasks and jobs with a reasoning level of 2 or 3.   *Id.* at 29 (citing, *e.g.*, *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. 2011); *Stone v. Comm'r of Soc. Sec.*, No. 2:16-

cv-253-FtM-CM, 2016 WL 4425865, at *8-9 (M.D. Fla. Aug. 21, 2016)).    The Commissioner further asserts *arguendo* that even if a conflict actually existed, it was not "apparent," and thus the ALJ did not have to address or resolve it.    *Id.* at 29-30.

> The tube operator job has a reasoning level of 2, which requires an ability to:
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.    Deal with problems involving a few concrete variables in or from standardized situations.

DOT, 239.687-014,[8] 1991 WL 672235.    The document preparer and order clerk jobs have a reasoning level of 3, which requires an ability to:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.    Deal with problems involving several concrete variables in or from standardized situations.

DOT, 249.587-018, 1991 WL 672349; DOT, 209.567-014, 1991 WL 671794.

In light of recent case law, the Court recommends the ALJ erred in failing to resolve the apparent conflict between the VE's testimony and the DOT.    The Eleventh Circuit recently clarified that "the ALJ has an affirmative obligation to identify any 'apparent' conflict [between the VE's testimony and the DOT] and to resolve it."    *Washington*, 906 F.3d at 1362; *see* SSR 00-4p, 2000 WL 1898704.    The court explained:

> The ALJ must ask the VE whether there is a conflict *and* must ask for an explanation if there appears to be a conflict.    Whenever a conflict is "apparent," the ALJ must also ask the VE about it.    Moreover, "[w]hen an ALJ identifies an apparent conflict that was not raised during a hearing, [the ALJ] can request an explanation of the conflict by submitting interrogatories to the vocational expert."    During or after

---

[8] The Court notes the ALJ's decision identified the tube operator position's DOT code number as 239.687-914.    *See* Tr. 34.    This appears to be a scrivener's error as the VE's testimony correctly identified the relevant DOT code number.    *See* Tr. 59.

the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them.

*Washington*, 906 F.3d at 1362 (emphasis and alterations in original) (internal citations omitted) (citing *Pearson v. Colvin*, 810 F.3d 204, 208 (4th Cir. 2015)).   By failing to identify and resolve apparent conflicts, an ALJ breaches "his duty to fully develop the record and offer a reasonable resolution of [the] claim." *Id.* at 1366.   A conflict is "apparent" if it "seem[s] real or true, but not necessarily so" to an ALJ with ready access to and close familiarity with the DOT.   *Id.* (quoting *Pearson*, 810 F.3d at 209).

In prior cases finding no apparent conflict between a reasoning level of up to 3 and a limitation to simple tasks, the courts either evaluated post hoc the particular requirements of the identified jobs—now impermissible under *Washington*—or relied on now-defunct legal propositions.   *See, e.g.*, *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016) (noting VE testimony trumps the DOT if there are inconsistencies and finding reasoning levels of 2 or 3 consistent with simple work based on post-hoc evaluation of specific jobs identified by VE); *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (finding ALJ did not err in relying on VE's testimony because VE testified there were no inconsistencies between his opinion and the DOT, the plaintiff did not offer evidence controverting the VE's testimony, and VE testimony trumps the DOT where there is an inconsistency); *Hurtado*, 425 F. App'x at 795-96 (finding no apparent conflict between the VE's testimony and DOT based on post-hoc evaluation of the plaintiff's skills compared to the identified positions and noting that regardless of inconsistencies, VE testimony "trump[s]" the

DOT).   In light of *Washington*, however, it is now clear the ALJ cannot blindly rely on the VE's testimony—the ALJ has the *affirmative duty* to take notice of apparent conflicts between the VE's testimony and the DOT and resolve them, regardless of whether the VE or plaintiff fail to identify such inconsistencies.   *See* 906 F.3d at 1362.   *Washington* also emphasizes failing to acknowledge such conflict is not harmless if the reviewing court cannot "conclude the ALJ adequately resolved any possible discrepancy in spite of his failure to even acknowledge the conflict," making it inappropriate for courts to analyze the identified jobs post hoc to resolve inconsistencies the ALJ failed to identify or resolve.   *See id.* at 1366.

Here, it "seem[s] real or true, but not necessarily so" that a job requiring someone to carry out "detailed" instructions or "[d]eal with problems involving several concrete variables" would conflict with a limitation to "simple, routine tasks."   *See* Tr. 29; *Washington*, 906 F.3d at 1362 (quoting *Pearson*, 810 F.3d at 209); DOT, 239.687-014, 1991 WL 672235; DOT, 249.587-018, 1991 WL 672349; DOT, 209.567-014, 1991 WL 671794.   Therefore, the Court recommends the ALJ erred by failing to identify and resolve the apparent conflict.   Further, because the Court cannot "conclude the ALJ adequately resolved any possible discrepancy in spite of his failure to even acknowledge the conflict," the Court recommends the error was not harmless. *See Washington*, 906 F.3d at 1366.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.      The decision of the Commissioner be **REVERSED** and this matter be

**REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),

for the Commissioner to:

  A.    Specifically address how Plaintiff's need for a cane to ambulate affects her RFC and her ability to perform other jobs in the national economy, which may require additional testimony from a vocational expert;

  B.    Re-evaluate the opinions of Dr. Bordy, articulating the weight given to the limitations he assessed and explaining the reasoning for discounting any of assessed limitations if the ALJ chooses not to incorporate them in Plaintiff's RFC;

  C.    Re-evaluate whether there is other work available in significant numbers that Plaintiff can perform given her Residual Functional Capacity, identifying and resolving any apparent conflicts between the testimony of a vocational expert and the DOT; and

  D.    Make any other determinations consistent with this Report and Recommendation, or in the interests of justice.

2.      The Clerk of Court be directed to enter judgment pursuant to sentence

four of 42 U.S.C. § 405(g) in favor of Plaintiff Mariela Borroto, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 8th day of January, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record